IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CY WAKEMAN, INC., an Iowa corporation, Individually and as Assignee of John Wiley & Sons, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> NICOLE PRICE CONSULTING, LLC d/b/a LIVELY PARADOX, a Missouri limited liability company and NICOLE D. PRICE, <br><br> Defendants. | 8:16-CV-541 <br><br> MEMORANDUM AND ORDER |

The primary opponents in this case are Cy Wakeman, founder of plaintiff Cy Wakeman, Inc. (collectively, Wakeman), and Nicole Price, who is a defendant along with her eponymous LLC (collectively, Price). Wakeman accuses Price of, among other things, violating copyrights held by Wakeman and misappropriating Wakeman's trade secrets. Filing 1 at 6-7.

Wakeman seeks to preliminarily enjoin Price from that alleged conduct. *See* filing 26. The parties have presented evidence, and the Court has conducted an evidentiary hearing at which Wakeman and Price both testified. On the evidence presented, the Court finds that Wakeman has failed to show the necessary likelihood of success on the merits of her claims, and failed to demonstrate that she has been—or will be—irreparably harmed in the absence of a preliminary injunction. So, Wakeman's motion (filing 26) will be denied.

## I. BACKGROUND

Wakeman is in the business of providing business training and coaching services, with speeches and seminars on business leadership and employee advancement. Filing 28-2 at 1. Wakeman's programs are primarily based on a concept she calls "Reality-Based Leadership." Filing 28-2 at 1. Wakeman is also the author of two books based on that concept: *Reality-Based Leadership*, published in 2010, and *The Reality-Based Rules of the Workplace*, published in 2013. Those books, according to Wakeman, have combined sales of approximately 46,000 copies. Filing 55 at 24.

Price worked for Wakeman from 2012 until 2016. Filing 28-2 at 1. Price was one of Wakeman's featured speakers, and also assisted in the development of new programs, including a presentation on "Reality-Based Diversity and Inclusion in the Workplace." Filing 28-2 at 1; *see* filing 28-9. Wakeman terminated Price's employment in 2016; according to Wakeman, she fired Price after she found out about Price's intent to launch a competing business. Filing 28-2 at 2. After her termination, Price started her own consulting business. Filing 34-1 at 1. And she published her own book, *Lively Paradox*, which she says has sold about 200 copies. Filing 34-1 at 2.

Wakeman sued Price, alleging in relevant part that *Lively Paradox* infringed on Wakeman's copyrights in *Reality-Based Leadership*, *The Reality-Based Rules of the Workplace*, and the text and images of the PowerPoint presentation associated with "Reality-Based Diversity and Inclusion in the Workplace." Filing 1 at 2-7. Wakeman also alleges that Price has misappropriated Wakeman's trade secrets by publicly revealing some of Wakeman's confidential clients. Filing 1 at 7. Wakeman asks for a preliminary injunction "with regard to the sales, distribution and use of

copyrighted materials and references to confidential Wakeman clients on [Price's] real and virtual materials." Filing 26 at 2.

## II. DISCUSSION

When deciding whether to issue a preliminary injunction, the Court weighs the four *Dataphase* factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Johnson v. Minneapolis Park & Recreation Bd.*, 729 F.3d 1094, 1098 (8th Cir. 2013); (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). A preliminary injunction is an extraordinary remedy, and the movant bears the burden of establishing its propriety. *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### 1. COPYRIGHT CLAIMS

As noted above, Wakeman claims that Price's *Lively Paradox* infringes on Wakeman's own copyrighted works.

#### (a) Likelihood of Success on the Merits

The Court begins by assessing Wakeman's likelihood of success on the merits of her copyright claim, because in deciding whether to grant a preliminary injunction, likelihood of success on the merits is the most significant factor. *Laclede Gas Co. v. St. Charles Cnty.*, 713 F.3d 413, 419-20 (8th Cir. 2013). A party seeking injunctive relief need not necessarily show a greater than 50 percent likelihood that it will prevail on the merits. *Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*, 530 F.3d 724,

731 (8th Cir. 2008). But the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied. *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013).

The elements of copyright infringement are (1) ownership of a valid copyright and (2) copying original elements of the copyrighted work. *Warner Bros. Entm't v. X One X Prods.*, 644 F.3d 584, 595 (8th Cir. 2011). Copying can be shown either by (1) direct evidence, or (2) access to the copyrighted material and substantial similarity between the copyrighted work and the allegedly infringing work. *Id.* There is no direct evidence of copying here.[1] So, the question is whether the works are substantially similar.

Determination of substantial similarity involves a two-step analysis. *Rottlund*, 452 F.3d at 731. There must be substantial similarity both of ideas and of expression. *Id.* Similarity of ideas is evaluated extrinsically, focusing on objective similarities in the details of the works. *Id.* If the ideas are substantially similar, then similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression. *Id.* In other words, the Court must first consider whether the general idea of the works is objectively similar (the "extrinsic" portion of the test) and then determine whether there is similarity of expression (the "intrinsic" portion of the test). *See Taylor Corp. v. Four*

---

[1] Wakeman suggests in passing that she has shown direct copying. Filing 27 at 18-19. But to prove direct copying is to disprove independent creation. *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 732 (8th Cir. 2006). Direct evidence of copying is rarely available because it includes evidence such as party admissions, witness accounts of the physical act of copying, and common errors in the works of plaintiffs and the defendants. *See id.* (collecting cases); *see also Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939, 941-42 (8th Cir. 1992). There is no comparable evidence here.

*Seasons Greetings, LLC*, 315 F.3d 1039, 1043 (8th Cir. 2003).[2] Wakeman has not shown a likelihood of success on the merits of either step of that analysis.

### *(i) Extrinsic Similarity*

Extrinsically, Wakeman points to several parts of *Lively Paradox* that, she says, represent content taken "nearly verbatim" from her copyrighted works. Filing 27 at 5-14. She argues that "*Lively Paradox* violates the 'extrinsic test' by objectively stealing the expression, organization and application of certain ideas from Wakeman-copyrighted works." Filing 35 at 3. But the extrinsic test requires more than that: "[t]he extrinsic inquiry is an objective one, looking to specific and external criteria of substantial similarity between the original elements (and only the original elements) of a protected work and an alleged copy." *Copeland v. Bieber*, 789 F.3d 484, 489 (4th Cir. 2015) (quotations omitted). Wakeman has done little to categorically identify such external criteria here. *Compare* filing 35 at 3 *with, e.g., Swirsky v. Carey*, 376 F.3d 841, 845-49 (9th Cir. 2004).

And because it is focused only on the original elements of the copyrighted work, a court examining extrinsic similarity must first engage in "analytic dissection," separating out those parts of the work that are original and protected from those that are not. *Id.*; *see Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000); *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1257 (11th Cir. 1999). In other words, extrinsic similarity cannot be shown by cherry-picking common ideas between the works—at least, not without considering whether those common ideas are original, copyrightable

---

[2] Wakeman represents this analysis as being disjunctive—that is, she says that the extrinsic and intrinsic tests are "two ways" to demonstrate substantial similarity, only one of which need be met. Filing 35 at 3. But it is clearly a two-step analysis, requiring the plaintiff to satisfy both tests. *E.g. Taylor*, 403 F.3d at 966.

elements of the copyrighted works. *See Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 436 (4th Cir. 2010); *see also Herzog*, 193 F.3d at 1257.[3]

And here, most if not all of the comparable elements Wakeman points to are references to common ideas or experiences that both *Lively Paradox* and Wakeman's works drew from underlying common sources. The principle that a copyright does not protect ideas, but only the expression of those ideas, is longstanding. *Frye v. YMCA Camp Kitaki*, 617 F.3d 1005, 1008 (8th Cir. 2010); *see Baker v. Selden,* 101 U.S. 99 (1879); *Mazer v. Stein,* 347 U.S. 201, 217-18 (1954); *see also* 17 U.S.C. § 102(b). "Ideas as such are not subject to copyright. Nor is the right to the use of certain words protected by copyright. A copyright secures the right to that arrangement of words which the author has selected to express [her] ideas." *Funkhouser v. Loew's, Inc.*, 208 F.2d 185, 189 (8th Cir. 1953) (citations omitted).

Price presented evidence, and testified at length, about the original source for many of the ideas common to *Lively Paradox* and Wakeman's copyrighted works. Filing 34-1 at 4, 6-9; filing 56 at 18-23. Those ideas are not protected by Wakeman's copyrights, only the expression of those ideas—and the Court is not persuaded that the expression of those ideas in *Lively Paradox* is particularly similar to Wakeman's expression of those ideas. There are, after all, only so many ways to accurately explain those ideas.

---

[3] Contrary to Wakeman's suggestion, filing 35 at 1-2, the assertion that a copyrighted work contains non-copyrightable elements is not tantamount to suggesting that the copyright is invalid: copyright protection may extend to the components of a work that are original to the author, even if not every element of the work may be protected. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348-49 (1991).

> Factual works are different from fictional works. Subsequent authors wishing to express the ideas contained in a factual work often can choose from only a narrow range of expression. Therefore, similarity of expression may have to amount to verbatim reproduction or very close paraphrasing before a factual work will be deemed infringed.

*Landsberg v. Scrabble Crossword Game Players, Inc.*, 736 F.2d 485, 488 (9th Cir. 1984) (cleaned up); *see Iverson v. Grant*, 946 F. Supp. 1404, 1417-18 (D.S.D. 1996), *aff'd,* 133 F.3d 922 (8th Cir. 1998).

There are, to be sure, instances of probably non-coincidental similarity, such as *Lively Paradox*'s use of illustrations that are markedly similar—or, in one instance, identical—to PowerPoint slides included in "Reality-Based Diversity and Inclusion in the Workplace." *See* filing 27 at 8-11. But the Court is not fully persuaded that, in this context, the design choices associated with conveying the ideas are materially significant—and, because it is hard to discern the content of "Reality-Based Diversity and Inclusion in the Workplace" based only on the PowerPoint slides that are protected by Wakeman's copyright, it is also hard to assess the context in which the illustrations are being used in both works.

### *(ii) Intrinsic Similarity*

And, even if the Court was persuaded that the instances relied upon by Wakeman showed extrinsic similarity, the Court is not convinced that the works are intrinsically similar, based on the response of the ordinary, reasonable person to the forms of expression. Infringement of expression occurs only when the total concept and feel of the works in question are substantially similar. *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120-21

(8th Cir. 1987); *see Taylor,* 315 F.3d at 1043. And Wakeman's "scattershot approach" to demonstrating similarity "cannot support a finding of substantial similarity because it fails to address the underlying issue: whether a lay observer would consider the works as a whole substantially similar to one another." *Williams v. Crichton,* 84 F.3d 581, 590 (2d Cir. 1996); *see McMahon v. Prentice-Hall, Inc.*, 486 F. Supp. 1296, 1304 (E.D. Mo. 1980). So, the Court must evaluate the works in their entirety.

*Reality-Based Leadership* contains advice for workplace supervisors; it attempts to identify causes of workplace unhappiness and presents a detailed plan for combatting them, in oneself and others. It emphasizes reacting to empirical facts instead of interpreting them through a preexisting narrative, and can be loosely summarized as urging personal accountability and a focus on productive results from leadership strategies. It notes, for its audience, a difference between management and leadership.

*The Reality-Based Rules of the Workplace* contains many of the same ideas, but is intended for employees at every level, not just management and leadership. As a result, it puts a greater emphasis on personal accountability, not motivating or engaging others. It contains tools for self-assessment and self-improvement.

"Reality-Based Diversity and Inclusion in the Workplace" (filing 28-9) is, as noted above, difficult to fully assess based only on a PowerPoint presentation. But it appears that "Reality-Based Diversity and Inclusion in the Workplace" is directed at those in leadership and management who are seeking particular advice on addressing diversity issues. It presents the same strategies as *Reality-Based Leadership*, but aims them more precisely at the challenges and opportunities presented by workplace diversity.

*Lively Paradox* (filing 29-2) is a different kind of book, based on a far more personal narrative from the perspective of a Black woman in the workplace. It discusses ideas relating to power in relationships between people, based on their different attributes and in different contexts, and what behavior is appropriate for those who have more power in a relationship. It offers advice on learning to manage and accept differences. It describes different biases people have, conscious and unconscious, and presents strategies for addressing and overcoming them. Generally, *Lively Paradox* is focused on providing advice specifically tailored for those who are disempowered because they are "different, underrepresented, or on the fringes of societal norms." Filing 29-2 at 46.

Like *Reality-Based Leadership*, *Lively Paradox* does mention ideas like "personal accountability," "learned helplessness," and "unconscious bias," but it discusses those ideas in a different context and with a different purpose. When the works are considered in their entirety, the common ideas they share do not demonstrate that the works are intrinsically similar. "The test is whether the resemblance would be recognized by ordinary observation, not fine analysis or argument. Hypercritical [dissection] of sentences and incidents should not be resorted to in an attempt to show substantial similarity." *McMahon,* 486 F. Supp. at 1304 (citations and quotations omitted); *see Funkhouser,* 208 F.2d at 190; *see also Banker's Promotional Mktg. Grp., Inc. v. Orange,* 926 F.2d 704, 705 (8th Cir. 1991). Even if some of the same underlying material was relied upon, the works bear no real resemblance to each other. *See Funkhouser,* 208 F.2d at 190; *see also Orange,* 926 F.2d at 705.

As a result, the Court finds that, at least based on the evidence presented at this stage of the proceeding, Wakeman has not shown a "fair

chance of prevailing" on her claims. *See Powell v. Noble*, 798 F.3d 690, 698 (8th Cir. 2015).[4]

(b) Likelihood of Irreparable Harm

Furthermore, a preliminary injunction cannot issue without a showing of irreparable harm. *Dataphase*, 640 F.2d at 114 n.9. To show a threat of irreparable harm, the movant must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief.[5] *Roudachevski*, 648 F.3d at 706. Stated differently, the harm "must be

---

[4] Price also suggests that Wakeman failed to show a likelihood of success on the merits because she failed to address any of Price's affirmative defenses. Filing 33 at 10. On that point, Wakeman has the stronger argument: the better-reasoned approach is that "'[b]ecause 'the burdens at the preliminary injunction stage track the burdens at trial,' once the moving party has carried its burden of showing a likelihood of success on the merits, the burden shifts to the non-moving party to show a likelihood that its affirmative defense will succeed." *Perfect 10, Inc. v. Amazon.com*, 508 F.3d 1146, 1158 (9th Cir. 2007) (quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006)).

[5] Wakeman suggests that irreparable harm may be presumed upon a finding of likelihood of success on the merits in a copyright case. Filing 27 at 21-22. The Court disagrees: the Supreme Court "has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392-93 (2006); *see Winter*, 555 U.S. at 22 (plaintiffs seeking injunctive relief are required to demonstrate that irreparable injury is *likely* in the absence of an injunction); *see also Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012); *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011); *Salinger v. Colting*, 607 F.3d 68, 82 (2d Cir. 2010); *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007); *cf. Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 894-95 (8th Cir. 2013) (discussing authority rejecting presumption of irreparable harm and affirming district court's denial of injunctive relief based on failure to prove irreparable harm).

actual and not theoretical." *Brady v. Nat'l Football League*, 640 F.3d 785, 794 (8th Cir. 2011). And harm is not irreparable when a party can be fully compensated for its injuries through an award of damages. *Gen. Motors Corp. v. Harry Brown's, LLC,* 563 F.3d 312, 319 (8th Cir. 2009).

Wakeman presented no evidence that her book sales or speaking engagements had been affected by Price's alleged appropriation of Wakeman's copyrighted materials—and, even if such evidence had been presented, there is no reason that the injury of lost customers or lost sales could not be remediated with money damages. *Cf. Novus Franchising,* 725 F.3d at 895; *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 161 (2d Cir. 2012).

Wakeman also argues that she has shown irreparable harm because she was asked by her publisher to take material adapted from "Reality-Based Diversity and Inclusion in the Workplace" out of her third book, *No Ego*, because of concerns posed by *Lively Paradox*. Filing 27 at 22; *see* filing 28-2 at 2; filing 35-1; filing 55 at 15-16. But as the Court understands the record, that book's contents were final before the Court's evidentiary hearing—so, it is not clear to the Court how a preliminary injunction would unscramble that egg. *See* filing 35-1; filing 55 at 17. Nor is it clear how a preliminary injunction would address this issue, even with respect to any future publications, given the Court's understanding that it is the copyright on *Lively Paradox*, and not its sales, that concerns Wakeman's publisher.

It is the movant's burden to "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter,* 555 U.S. at 22 (emphasis in original); *see Minn. Bearing Co. v. White Motor Corp.*, 470 F.2d 1323, 1326 (8th Cir. 1973). The implication of that proposition is that an injunction should not issue where the allegedly irreparable injury would occur despite

the injunction. Accordingly, "[i]t is black letter law that an injunction will not issue when it would be ineffectual." *United States v. Parish of St. Bernard, 756 F.2d 1116, 1123 (5th Cir. 1985)*. The Court has been presented with no reason to believe that the preliminary injunction Wakeman requests "with regard to the sales, distribution and use of copyrighted materials," filing 26 at 2, would address any injury related to Wakeman's inability to publish her diversity-related materials.

### (c) Remaining Factors

Obviously, having found little evidence to establish irreparable harm to Wakeman, the Court's finding regarding the balance of harms also weighs in favor of Price. The Court sees little evidence that Wakeman is being irreparably harmed, but the injunction sought by Wakeman would be devastating to Price. Filing 34-1 at 10. Because a preliminary injunction is an extraordinary remedy never awarded as of right, the Court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. *Winter,* 555 U.S. at 24. Granting an injunction could effectively close Price's business—so, accordingly, the balance of harms tips toward Price.

Finally, while Wakeman is correct that there is a public interest in protecting intellectual property, filing 27 at 24, there is also a public interest in free competition. *See Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.,* 815 F.2d 500, 505 (8th Cir. 1987). The Court does not find the public interest to weigh in favor of granting or denying injunctive relief.

### (d) Conclusion

Based on the *Dataphase* factors, the Court finds that Wakeman has not demonstrated the propriety of injunctive relief on her copyright claims.

## 2. TRADE SECRETS

Wakeman also seeks to have Price enjoined from "references to confidential Wakeman clients on [Price's] real and virtual materials." Filing 26 at 2. But, insofar as this is styled as a trade secrets claim, the Court finds no likelihood of success on the merits.

Wakeman's trade secrets claim is brought pursuant to the Nebraska Trade Secrets Act, Neb. Rev. Stat. § 87-501 *et seq*. And under Nebraska law, a "trade secret" is defined as information that:

> (a)  Derives independent economic value, actual or potential, from not being known to, and not being ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b)  Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Neb. Rev. Stat. § 87-502(4).

The alleged "trade secrets" at issue here are the customer relationships between Wakeman and certain clients who, according to Wakeman, want their relationship with Wakeman to remain confidential. Wakeman argues that "[w]hile the entirety of Wakeman's customer list was not, and is not, a trade secret—Wakeman promotes its work on behalf of some clients on its website—the nature of Wakeman's coaching and consulting business make disclosure of other clients' identities a confidential matter." Filing 27 at 25. So, those clients have entered into confidentiality agreements with Wakeman. Filing 28-2.

But even if those customer relationships are sufficiently secret, it is far from clear to the Court how they have independent economic value. Who,

precisely, are the "other persons" to whom the relationships are unknown, but who "can obtain economic value from [their] disclosure or use"? Nebraska's statutory definition of "trade secret" is derived from the Uniform Trade Secrets Act § 1(4), 14 U.L.A. 537-38 (2005 & Supp. 2017), and under that definition, the "existence of a trade secret is determined by the value of a secret[.]" *AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.*, 663 F.3d 966, 972 (8th Cir. 2011). In other words, secrecy does not equal economic value. *GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 99 Cal. Rptr. 2d 665, 678 (Ct. App. 2000), *disapproved on other grounds by Reeves v. Hanlon*, 95 P.3d 513 (Cal. 2004).

So, even if information is confidential, it cannot be a "trade secret" unless it has "independent economic value"—that is, if possession of the secret information confers a competitive advantage. *See Capital Asset Research Corp. v. Finnegan*, 160 F.3d 683, 688 (11th Cir. 1998); *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1090 (9th Cir. 1986); *see also Fox Sports Net N., L.L.C. v. Minnesota Twins P'ship*, 319 F.3d 329, 336 (8th Cir. 2003). Wakeman argues that "[t]he independent economic value created by [the] secrecy [of Wakeman's client list] is the business those clients generate, business which would not be generated if Wakeman was unable to maintain their privacy." Filing 27 at 26. But that is just value *to Wakeman*, and is not *independent value*. Wakeman has identified no one else who could obtain an economic advantage from knowing who Wakeman's confidential clients are.[6] While Wakeman suggests in passing that "disclosure notifies competitors of

---

[6] Wakeman has not suggested that the information has independent economic value to Price—and correctly so, because Price already has that information, and "[i]f the principal persons who can obtain economic benefit from information are aware of it, there is no trade secret." Uniform Trade Secrets Act § 1 cmt., 14 U.L.A. at 538.

potential opportunities," filing 27 at 27, that is only "the most general of assertions," and falls short of demonstrating how a competitor, armed with knowledge of Wakeman's client relationships, could reap economic value from knowing them. *See Finnegan,* 160 F.3d at 683.

In the absence of a "trade secret" within the applicable statutory definition, the Court is not persuaded that Wakeman has any likelihood of success on her trade secrets claim. The absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied. *Barrett,* 705 F.3d at 320. So, while Wakeman has presented evidence of some harm resulting from the disclosure of client information, and the balance of harms and public interest do not weigh against injunctive relief, the Court finds that Wakeman's failure to show any meaningful likelihood of success on the merits precludes a preliminary injunction.

### III. CONCLUSION

For the foregoing reasons, the Court finds that Wakeman has not carried her burden of proving the propriety of injunctive relief. Accordingly,

IT IS ORDERED that Wakeman's Motion for Preliminary Injunction (filing 26) is denied.

Dated this 24th day of January, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge